May it please the Court, Matthew McHenry on behalf of Calbruce Green, who is a plaintiff in this case. Keep your voice up and speak clearly. Will do, Your Honor. So, Your Honor, specifically, Judge Paez, you spoke during the last argument about this Court's experience with summary judgment, and I appreciate that because that's where I believe this case, this particular appeal, focuses on. And I know it's an axiomatic standard that's been around a long time, but it's important enough that the Supreme Court, just a matter of a month ago or so, reiterated the importance of that standard and the fundamental principle that all reasonable inferences have to be drawn in favor of the non-moving party and that then the evidence of the non-moving is to be believed, and all justifiable inferences are to be drawn in his favor. And, Your Honor, in this case, the lower court did find two situations where we had created a factual dispute about whether the TriMet employee knew of my client's disability and also whether or not he was excluded by reason of that disability. The court went on, though, to grant the summary judgment, of course, by stating that the plaintiff had not identified any specific accommodations that TriMet was required to provide, and that's where I think the court failed in applying the summary judgment standard. The purpose of the ADA, as we've outlined in our briefing, is to identify discrimination and address a discrimination that's not just the product of animus, but also of thoughtlessness and indifference. And that, because of that standard and because that's the policy behind the ADA, as the case law tells us, it needs to be construed broadly in these kinds of cases. And for the court to come down with an additional requirement that's not listed in any of the elements, that not only do we have to show, as we have, that there is a relationship between the disability and the exclusion, but also that we have to establish affirmatively at this point at the summary judgment stage that any of our proposed accommodations would have been effective is simply not contemplated in the ADA and certainly not at the summary judgment stage. The cases that we've cited along those lines, Your Honor, just say the words that they use, and I'll use the Kimbrough cases out of the Ninth Circuit. The words they use are that they have to be plausibly related, that it has to be plausible that this accommodation would enable the individual to be able to access these services. It has to seem reasonable. Even Judge Brown said in her, during the summary judgment hearing, that we had established that some of these things might work. There was agreed-upon statement of facts here, correct? There was. And that was what was presented to the district court judge, right? That and deposition testimony in several exhibits, of course. So on the key material facts, there was basically agreement, right? Yes, I believe there was. On certainly the timeline of the events and the players involved, yes. I don't think there's a lot of dispute here over ---- They directed him to the right bus and pointed out the right bus. Yes, they told him that was the wrong bus, as they told all the other abled passengers. They directed the other passengers to the right bus. That's correct. He was there. He watched all of that. Yes, he was there when all that happened. And what we know from his disability is that he simply does not process communications the same way. So your point is only that you need to show some minor connection or no connection? Well, Your Honor, the courts are actually in a bit of a dispute about what we need to establish. But what the district court has stated is that we need to establish sort of affirmatively that these things are going to be effective. And that's not even close to what the cases say. They say we have to establish a nexus. It's kind of a case law, so. Well, Your Honor, what the case law talks about is a nexus, is a relationship. It's particularly at the summary judgment stage when we're not required to do anything other than establish a factual dispute. There's no case law that we were able to locate that says anything beyond it has to be a nexus. Some of the cases that the defendant has cited suggesting otherwise, if the court looks at those cases, it's not talking about what we're talking about here. The cases that the defendant has cited is talking about whether ---- I thought you had to show that the accommodations that you're proposing would necessarily have accomplished or would have avoided the discrimination. I don't think we do have to show that, Judge, and that's what I'm getting at. I think what we have to show, according to Kimbrough, is that it's plausible. We have to show that it's reasonable to think that that may have given Mr. Green the ability to access these services. To require us at the summary judgment stage to prove that something that didn't happen would have been effective. Let's assume you get over summary judgment and you're at trial. What would you have to prove in order to prevail? Well, I think, Your Honor, what we would have to do is suggest to the jury that these accommodations that we were suggesting would have been reasonable. So what specific kinds of accommodations do you believe would have made it likely or feasible or reasonable for him to have accessed the bus on that? Sure. For the most part, we've drawn those from TriMet's own training materials. Right. And what they suggest to individuals, to their own employees, about what should happen when they're dealing with cognitively disabled individuals. You're talking about the three-step cycle for better communication? That's one of them, Your Honor. That's certainly in our excerpts. But it's things like using multiple explanations, using different words. It's asking questions of the individual to track their understanding. It's using patience. It's understanding that you may have to repeat yourself multiple times to get your point across. It's asking them to repeat back, asking them what they're looking for. There is, I believe, as the defendant pointed out, there's a list of 40 bullet points in their training materials of actions that should be taken when dealing with individuals like this. None of those actions were taken here. The employee says specifically, I didn't treat him any different from anybody else. And while that is a noble position to take when dealing with disabled individuals, it's frankly not what the ADA requires. The ADA requires different treatment. The ADA requires accommodations. And what we have here is evidence that the employee was in a hurry. He wanted to get home. His only goal, these are his statements from deposition, his only goal was to get the buses back routed on time. His goal should have been to help this disabled individual access these federally protective services. When they spoke to the officers, and I think this is the most telling thing, and perhaps even more telling with respect to the argument on deliberate indifference that I'd like to address during my rebuttal time. Well, actually, I hope you don't wait until rebuttal. Okay. Because that's what I need to be persuaded on, just so you know. Okay. Well, Your Honor, we have to demonstrate deliberate indifference under the ADA. We have to show two things, essentially. It's not a complicated analysis. It is, number one, that the employee had knowledge of the danger that he was going to be precluded from accessing a federally protective right. Say that again. That didn't make any sense. The first thing we have to establish is that the employee was aware of the danger that, aware of the risk that the federally protective right, he would be precluded from accessing that. That's the first thing. Essentially, he has to know that if he doesn't take some action. Let me give you my take on the facts, and then you correct me where I've gone wrong. Okay. Because I just don't see deliberate indifference, and I want to hear what you have to say on this. I see an employee who does what he thinks he can do to try to communicate with someone who obviously is having difficulty understanding what is trying to be communicated to him, and he says at some point, look, I don't know what else I can do. I need to turn to somebody else to get help. He goes to the police officer and says, hey, you know, we have this person on the bus that I haven't been able to persuade to leave. I'm sort of, I've run out of options on my end. Could you please step in? The employee at that point certainly doesn't know all that's going to happen, all that the police are then going to do wrong to dramatically worsen the situation for your client. They have no way of knowing that at the point. They just know that we've tried what we can. We can't just sit here all night. Let's ask the police for help. So that's what I see, and I just don't see deliberate indifference in that. So maybe help me see the light. Two things, Your Honor. I appreciate the question. The first is what the legal definition of deliberate indifference is, and that is that individual knowing that if he doesn't do something, there's a risk that this person is going to be precluded from accessing these services as a result of the disability. We established that. The court found that we had created a factual dispute in that regard, and our brief is replete with evidence that Mr. Gallagher knew full well that Mr. Green was cognitively disabled at the time. Once we've established that under the legal definition, the next thing we have to establish is that he failed to act, that he failed to take the steps necessary to ensure that that risk didn't come to fruition, and that's where I also will disagree with some of the characterization of Mr. Gallagher's actions that night. He didn't do everything he could. He simply didn't. He didn't follow all of his training. He treated that passenger like every other passenger. He said, that bus is over there. You need to get on it. He said it multiple times, but that was it. When he approached the police officers, knowing this individual is cognitively disabled, he doesn't say, hey, officer, we've tried everything we can, and we're sort of at our wit's end here, and can you give us a hand. What he says is, I need this guy off the bus. He won't get off the bus. He's acting hostile to me. Please remove him. There's a very different, that to me is deliberate indifference. He's aware that this individual is having troubles communicating. All he tells the officer is, this guy is acting very hostile. I need him off the bus. I mean, try to then analogize this to the cases that we have finding deliberate indifference, because to me they just have a totally different cast to them. Just a little louder, please. I'm sorry, Judge Gregerson. I was asking counsel to address the cases that we have that have already found deliberate indifference, because to me they just seem to be of a very different character from what happened here. I don't disagree with you, Judge. This is a unique case, I think. There is a dearth of case law when it comes to ADA claims with respect to cognitive disabilities, and I don't think that this particular fact pattern fits into any of our existing cases that are out there. It's a very unique situation. I mean, what I would say to that, I guess, in response is simply going back to the legal standard, which is once he has that knowledge that if he doesn't do something, my client's federally protected right to access public transportation is going to be affected, he needs to do more than just contact police and say this individual is being hostile. He needs to employ that, the training, the 40 bullet points that he says he tries to employ. He simply didn't do it that night. And I guess what we do know from our cases, and you don't dispute this, is that the employee's failure in this scenario has to be more than negligence, right? It does. Right? Absolutely. And so, yeah, he should have done more. We would all agree with that, especially the way things turned out. There's no question there. But, I mean, I just don't see something more than negligence. Well, Your Honor, what we would use, and again, at the summary judgment stage, we're just creating a factual dispute here, but I think there is significant evidence that suggests it wasn't just negligence. It's the idea that he says he's in a hurry. Man, I just don't want to fill out this paperwork. He's having conscious thoughts. It's not negligence. He's having conscious thoughts of getting this guy dealt with so he doesn't have to. Again, he tells the officers the individual is being hostile when he knows the individual is cognitively disabled. That's not negligent. That's an affirmative statement on his part. That demonstrates to me a deliberate indifference. And you think he said that because he wanted the police to respond in the way they did? Judge, that's not for me to decide. I think what he should have said was, this individual is exhibiting signs that my training has told me suggests he's cognitively disabled, and not just said the individual is being hostile. Because, obviously, I think that frames the situation for the officers in the way that they're going to approach him. And if they had been told he was cognitively disabled, I think we would have had a very different outcome here. But, I mean, I appreciate the way you're framing it, that he was indifferent to your client's right to access these services. But, in reality, all he was trying to do was ensure that your client was removed from the bus so that, in fact, he could get on the right bus. See, that bus wasn't going anywhere that your client wanted to go. So he contacts the police. This is just what I'm saying, how I view it. He contacts the police in the hope that maybe they'll be successful in just getting him off the bus, not in tasing him and holding him. I mean, all that happened afterwards was completely inappropriate, and I assume that's why, hopefully, you were able to settle with those other defendants. We did, Your Honor. But this started with TriMet's actions. And we're not suggesting that TriMet is liable for everything that happened after he was removed from the bus. We're suggesting TriMet is liable for what happened before he was removed from the bus. And the right is not the right to get off that bus. The right is the right to get on the right bus and access public transportation. And, again, he made no accommodations. He treated Mr. Green exactly like he treated everyone else. His statements were, well, everyone else figured it out. That's not what the ADA requires. The ADA requires him to take affirmative steps. That's more than negligence. I've got a minute left. I'll reserve. Who is in charge of care for your client? I'm sorry, Judge? Can you repeat that question? Who is the caretaker for your client? Who is in charge? Who is the caretaker? Oh, his caretaker is a woman named Linda French Davis. She gave a deposition in the case, and a lot of her statements are in the record. Okay. We'll hear from Bob. Does he need a note, maybe to show the bus driver where he wanted to go? Well, Your Honor, Mr. Green had been using public transportation for several years at that point, and as supported by the evidence in the record, he didn't need notes. He was able to use the placards and the schedules, and if he had an idea of where he was going and knew the correct bus routes, it was never an issue for him. The issue that came up here was obviously something occurred that came out of the ordinary, and what we're alleging is that TriMet needed to accommodate him in order to let him continue to access their services in light of what had happened on their end. So what should they have done? Well, Your Honor, what they should have done is what we suggested in our briefs, which is more than just treating him like every other passenger. This is probably what they should have done. They should have asked him questions, first one. They should have asked him where he was trying to go. They should have asked him if he understood. They should have maybe drawn him a picture. They should have used gestures more than just pointing to the other bus. They should have used multiple explanations using different kinds of words. They should have used simpler words. These are things that are all in the training materials. The other thing that I'd point out is that in the retraining materials, it also says you shouldn't rely on a third party to act as a middleman. You should figure this out yourself. And that's the other thing that he did here. He kind of threw up his hands and said, let the officers deal with this. Okay, we'll hear from opposing counsel. Thank you. Good morning, and may it please the Court. Eric Van Hagen on behalf of Defendant TriMet. As your honors are well aware, this incident stems from a very brief interaction. I think you're going to have to do something with the mic. Thank you. This incident stems from a very brief interaction between the plaintiff and two TriMet bus operators who tried repeatedly to get him on the right bus. They showed him. They pointed to the bus that was parked right in front of him, and there's video evidence showing the operators pointing, there's the bus you need to get on. They tell him repeatedly where he needs to go. And the problem here with this case really comes down to, as has been mentioned in this case and cases that have been argued before you today, the burden on summary judgment here and the absence of evidence with respect to critical elements of the case, particularly that any effective accommodation was present here that would have enabled him to exit the bus. And I don't know what the standard exactly needs to be, but it has to be effective. What quantum of evidence you need to show with respect to whether the accommodation would be effective isn't really at issue in this case. You're arguing that there's nothing else they could have done to try to get him to persuade him to leave the bus? Nothing? That's not my argument, Your Honor. My argument is that to survive summary judgment, the plaintiff would have needed evidence from the plaintiff himself, somebody who works with him. That caretaker gave evidence as to how in the past she's been able to deal with, it seems like, similar situations, right? But it was never linked to whether that would have enabled him to get off the bus. She said he would probably be, if you asked him to get off the bus, he'd be able to get, he should be able to do that. So nobody is saying that, you know, there's a question of what this accommodation was, and it's a bit of a shifting thing, you know, in an oral argument in the district court, it was use good eye contact, smile, lean toward the plaintiff, give appropriate cues that he was listening, like saying yes and I'm hum. Let me just, the problem I have with your argument is that that requires us, doesn't it, to accept the notion that there's basically nothing else that could have been done here, that man was going to have to be physically taken off the bus in order to leave, and I just don't, I don't know how we could conclude that. There certainly is at least a factual dispute as to whether that was going to be ultimately necessary, isn't there? But what would the jury have to rely on in order to determine that those accommodations would have gotten him off the bus? Now, if you look at all the others, particularly Title I kind of cases, we're talking about employment situations. You've got, first of all, this interactive process built in, and that's typically where you see the cases. And you see the, you know, the letter from the doctor that says, I think we should try this accommodation. And in cases like Humphrey v. Memorial Hospital, where they said it just needs to be plausible. Now, they don't even meet that standard here, but they said that the accommodation needs to at least be plausible. And the doctor said, you know what, I think this accommodation is worth trying. I'm not certain it's going to work. As a factual matter, how much time did, I can't remember the guy's name, but when Mr. Green is sitting in the back of that bus, how much time did the guy spend interacting with him to try to persuade him to leave? From the time that he, that Mr. Green entered that bus until the time that the police entered the bus was an elapsed time of approximately five minutes. It was about a five-minute situation. That was the time that he spent with him. He spent five minutes, you're saying? No, no, no. I just want to be clear. He spent five minutes, you know, doing all the, you know, hey. No, no, no. Because I don't remember that. No, no, no, no, no. That's not what I'm saying. Thank you for the opportunity to clarify that. I'm saying that from the time that Mr. Green entered the out-of-service bus to the time the police arrived was about five minutes. The amount of time that Mr. Gallagher spent with him, I'm not aware of. And it's not all captured, I don't think, on video. I got the impression that it was a matter of less than a minute, maybe a minute or two. So what you're saying is that if he had spent more time trying to go through these other things that are in your client's own policy, none of that would have mattered, and eventually police officers were going to have to enter that bus and physically remove him. I just don't see how we could conclude that. I'm not saying that. I think there are a number of different things you can look at and say, but really in a negligence sense, and I think that's why this case is in some ways kind of a square peg in a round hole because it's really a negligence case. And, you know, you could say the operator should have done something differently, but for them to survive their burden to say that there was an accommodation that he needed because of his disability in order to access the public services, then for the purposes of surviving summary judgment, they need to say what specifically would have effectively allowed him to access the public service at issue in this case. And in the absence of... They can't look to the bus company's protocol on that? If there was something from, say, a doctor that said in their training materials, they say take the following actions, A, B, and C, and if those actions, A, B, and C, had been done, then he would have exited the bus maybe to a reasonable degree of medical probability or for but-for causation. If there was something, something in the record that linked what he was supposed to have done, what the bus operator was supposed to have done, with the plaintiff's ability to then comprehend and exit the bus based on that accommodation, then arguably there would be a question of fact for trial. Now, whether that requires but-for causation, whether that requires, as I said, a reasonable degree of medical certainty in the medical context or in the expert context, or whether it's plausibility from Humphrey versus Memorial Hospitals, I don't think it would matter in this case because they don't even reach that minimum level of plausibility. In the Humphrey case, I think while discussing plausibility... I'm sorry, can you repeat that question, Your Honor? How do we know it doesn't meet the minimum level of plausibility? Because the record is totally absent that there is any connection between an accommodation and his ability to get off the bus. In the plausibility case like Humphrey, again, there was a doctor saying, I think he testified in his deposition, hey, this accommodation is worth trying. Now, that's not a level of certainty that you would put an expert on with respect to their expert opinion. What is the protocol that the bus company has adopted? What do they tell its bus drivers to do if they encounter a passenger who has certain disabilities that doesn't seem to comprehend what's being said to that passenger? What do they tell them they need to do?  The first part would be there are a list of communication strategies, and it's modeled really after the ADA that there's not a one-size-fits-all accommodation. If there was, we would only just say, here's a checklist of 41 things. Do all these things, and they ought to work. What was the bus driver trained to do? I mean, they encounter disabled people, I'm sure, quite often. And so what was he trained to do in a situation like this? Plaintiff has identified a number of things, and I won't repeat them here, but there are a number of different things that in the record in terms of the- I'm asking you, what was he required to do? The training materials don't reflect a requirement that you must do the following. What they do is give recommended practices. What do the training materials reflect that would be a nice thing to do? The training materials reflect practices for better communication, which would include using simpler words, adding gestures while you talk, showing how to do something while you tell the person to do it, writing something down, realizing you may need to give the person information multiple times. A lot of those things were done in this situation, but these are not per se accommodations. Rather, they are tips for better communication. And so under any standard, there is simply a lack of evidence connecting any of these proposed accommodations to plaintiff's ability to access services in this case. And then finally, Your Honors, just to conclude, I think that- Your client was in a big hurry to get the schedule moving, right? Mr. Gallagher expressed in his deposition that he was at the end of his shift. He was ready to get home. He was there for a bus trade to check in out of service or we don't know exactly why, but the bus that had for some reason encountered a problem on the road, and he was switching out that bus for a bus he was on. And, yes, he was at the end of the day ready to go home. It was late at night on a weekday evening in December of 2009. Finally, just to touch on intentional discrimination, because I think it's an important part that kind of always falls to the end of these conversations, but there's two elements to deliberate indifference here that has to be shown. Knowledge that a harm to a federally protected right is substantially likely and a failure to act on that likelihood. And to satisfy the first element, the plaintiff has to show that he- What if they just look at him, they spend a couple minutes with him, and get frustrated and just walk away and then call the police? Is that deliberate indifference or not? It's not, Your Honor, and I- Why not? Because he hasn't satisfied the elements of deliberate indifference because he hasn't alerted the public entity of his need for an accommodation and- But sure he has because he appeared not to understand what was being said to him. He didn't seem to be able to communicate or to comprehend what was being said to him. But in contrast to cases like Duval v. County of Kitsap where there is deliberate indifference, there's a situation where you have the person requesting accommodation saying, here's what I need. I need the following type of- Well, that's all going to depend on who the plaintiff happens to be or who the party claims injured or the party claims violates the ADA. I mean, it's not a one size fits all. You give a jury an instruction that they back and forth on that and then you let a jury decide. I mean, it didn't sound to me like he was treated too well. Your Honor, to respond to that, I also want to add that part of the training materials that I neglected to mention when you asked me about training materials, and there's deposition testimony or an affidavit from the director of training who says you're supposed to call the police. That is absolutely one of the- You can ask for assistance if you're having trouble, that assistance is appropriate to request in this kind of a situation. Well, we don't know who caused the trouble. You know, if he's- You spend a few minutes with him, he's frustrated, he wants to get off the bus, he wants to go home, it's late. And, I mean, he wanted to get off the bus, the conductor himself, the driver. He absolutely did, Your Honor, and I think the question becomes though whether TriMet violated the ADA here. And the only evidence in the record essentially consists of second guessing what ended up happening out there, as opposed to evidence in the record that but for some accommodation or on a reasonable degree of medical certainty, some accommodation would have actually allowed him to exit the bus. Well, maybe being nicer would have helped. Again, that might have worked, but if there was a- and there might be an issue of fact if there was somebody in the record who said that doing so would have increased the likelihood that he would have been- Well, that's something the jury could decide, right? But the jury's- there has to be some evidence. I mean, this really gets back to Celotex. The absence of evidence can support the moving parties case. There's no evidence that there's an accommodation that would have worked without delving into speculation, guesswork, and ex post arguments that we're making now four and a half years after the incident. That's the problem with- Well, these cognitive cases are difficult. Absolutely. Because, you know, what more- so you're always speculating as to what more could they have done. Right. And that's the difficult situation- They don't have a case. The difficult situation that an operator or any provider of public services has put in these situations is that, you know, they're not mental health professionals. They don't have the ability to diagnose people. They don't have the ability to, you know, in a brief interaction with a person, determine what type of accommodation needs to be there. You know, it looks like TriMed is aware of all those problems. They have this- they have training programs. Which, again, goes back to why there's no deliberate indifference. We try very hard. We take our obligations under the ADA very seriously. But you're talking about a bus operator who encounters someone briefly on a cold December night trying to figure out how to get everybody where they need to go. And when he runs into difficulty, he does what he's authorized to do by TriMed, which is ask for help. So he could go home. What's that? He wanted to go home. Sure, everybody wanted to go home. I mean, that was the whole idea, that everybody wanted to get where they needed to go and how they needed to get there. But, again, it comes back to does that equate with an ADA violation? You know, that's all a question of the jury's side. Not on this record, Your Honor, respectfully. I just- if there was something more in the record that connected this disability here, there might have been. But there's no ADA violation. There's certainly no deliberate indifference based on the facts of this case. Well, we've got to take another hard look at it. I see my time has expired. Are there any other questions? Thank you. You had some rebuttal time. Your Honor, I think I'm up on time. Well, I'll give you one minute. Unless the Court has some other questions, I think we've briefed this pretty well. Yeah. No, I mean, just am I right in thinking that if we don't agree with you on deliberate indifference, then the case is over? Well, no, I think in terms of whether we can recover monetary damages. Well, I thought that's all that was in play. Well, we'd also- there's other injunctive relief that we could be searching for as well, Your Honor. Certainly from the attorney's perspective, we would like to be able to recover monetarily on this. And I guess on that- Wait, wait, wait. I didn't understand you have a claim for injunctive relief. I thought all that was at issue was monetary damages. So what are you saying now? Well, that's what we alleged in our complaint, Your Honor, was monetary damages and any other relief that would be deemed appropriate. So I think we have the window open there to ask for some sort of injunctive relief if we lose this particular prong on the deliberate indifference standard. Again, what the record shows- But what would be your injunctive relief? Well, Your Honor, I guess we haven't gotten that far yet. We're- I thought you dropped these things. I thought you dropped the failure to train claim. We did drop the failure to train. All that's- you're just trying to seek- That's what's left, Your Honor. And on that point, he was in a hurry to get home. He said he didn't want to fill out any paperwork. He didn't mention to anybody that our client was cognitively disabled. He affirmatively said that he's acting hostile when he wasn't. That all equates to deliberate indifference, which doesn't necessarily- certainly not- it has to be more than negligent. But we have more than that here. Mr. Gallagher was clearly angry and frustrated and not being as patient as he should have been and choosing not to employ his training, and I think that goes beyond negligence. Okay. Thank you, counsel. We appreciate your arguments. Very interesting case.
judges: PREGERSON, PAEZ, WATFORD